J-A12038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMES BERGEN, | |
| Appellant | No. 3148 EDA 2014 |

Appeal from the Judgment of Sentence October 1, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006117-2012

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JUNE 02, 2016**

Appellant James Bergen appeals the judgment of sentence entered on October 1, 2014, by the Honorable Earl W. Trent in the Court of Common Pleas of Philadelphia County following his convictions of resisting arrest and three violations of the Uniform Firearms Act, 18 Pa.C.S.A. §§ 6106-6126.[1] Upon our review of the record, we affirm.

On the evening of May 3, 2012, Officers Michael Chichearo and Matthew Winscom were on patrol in full uniform and in a marked police vehicle in Philadelphia.  After observing a car fail to come to a complete stop

---

[1] The jury convicted Appellant of 18 Pa.C.S.A. §§ 5104, 6108, and 6106(a)(1).  In addition, following the parties' stipulation to Appellant's prior record, the trial court convicted him of 18 Pa.C.S.A. § 6105(a)(1).  Appellant does not challenge his resisting arrest conviction herein.

*Former Justice specially assigned to the Superior Court.

at a stop sign and almost collide with their police car, the officers activated their siren and pulled the vehicle over. N.T., 6/10/14, at 63-65. Officer Chichearo approached on the passenger side of the vehicle, and Officer Winscom approached on the driver's side. Officer Chichearo observed the male front seat passenger who was later identified as Appellant bent over and reaching for the floorboard area. *Id*. at 19, 67-68. Officer Chichearo opened the passenger-side door at which time Appellant sat up and began to exit the vehicle while the driver, later identified as James Black (hereinafter "Mr. Black), stated "he's got a gun." *Id*. at 21, 69. Appellant pushed Officer Chichearo and attempted to flee, but Officer Chichearo was able to grasp Appellant in the arm area. A lengthy struggle ensued in which Officer Winscom soon joined. *Id*. at 21, 70-71. During the tussle, Officer Winscom hit Appellant several times with an asp[2] in an effort to subdue him. *Id*. at 96-97.

Appellant refused the officers' repeated verbal requests to show his hands and instead kept them concealed in his waistband area. *Id*. at 71-72. Officer Chichearo called for backup and the officers' struggle with Appellant escalated. Eventually, backup arrived and five or six officers attempted to place Appellant in handcuffs. *Id*. at 75.

_____

[2] An asp is an expandable baton. Officer Winscom's had a small metal handle which could be extended to form a longer instrument. *Id*. at 96, 136-137.

After he had wrestled with Appellant for a few moments, Officer Chichearo observed Mr. Black exit the vehicle at which time Officer Chichearo directed Mr. Black to get on the ground, and Mr. Black initially complied. *Id*. at 30, 74, 99. Before Officer Chichearo reached him, Mr. Black stood up and fled on foot, and Officer Chichearo chased him. A few moments later, Officer Chichearo overtook Appellant, placed him in handcuffs and led him directly back to the vehicle. *Id*. at 99-101. Mr. Black ultimately was cited for driving with a suspended license. *Id*. at 103.

When Appellant finally was handcuffed and Mr. Black had been detained, Officer Chichearo went back to the vehicle and noticed the passenger-side door was still ajar. When he looked inside, he saw the handle of a black firearm protruding from underneath the passenger seat. *Id*. at 32-33, 76. Officer Chichaero immediately removed the firearm from the vehicle and took out the magazine so it was no longer a loaded weapon. *Id*. at 77.

Officer Winscom testified that as he approached the driver's side of the vehicle, he observed Appellant hunched over and was unable to see his hands because he was reaching in the area under the seat. *Id*. at 127-228. He warned Officer Chichearo to proceed with caution because he believed Appellant was stuffing something under the seat. *Id*. at 129. When Officer Winscom approached the car and asked if there was anything therein, Mr. Black instantaneously replied that Appellant had a gun. *Id*. at 132. Officer

Winscom further detailed the difficulty he experienced while attempting to detain Appellant after Officer Chichearo left to pursue Mr. Black and before backup officers arrived. He indicated he used the handle of his asp like a weapon, for Appellant had overpowered him and Officer Winscom was not sure whether Appellant had a loaded firearm on his person. *Id*. at 133-44.

Appellant filed an omnibus pre-trial motion on July 25, 2012, and a motion in limine on February 20, 2014, to introduce Mr. Black's prior arrest and conviction in 1998 of Carrying a firearm without a license, 18 Pa.C.S.A. § 6106. On June 10, 2014, the trial court held a hearing on and denied Appellant's motion to suppress evidence, and a jury trial immediately ensued. The trial court ultimately sentenced Appellant to an aggregate term of six years to fifteen years in prison. Appellant filed a Motion for Reconsideration of Sentence and a Motion for Reconsideration of New Trial on October 9, 2014. In its Order of October 15, 2014, the trial court denied Appellant's motion to modify sentence, and in its Order of October 27, 2014, the trial court denied Appellant's motion for a new trial.

Appellant filed a timely notice of appeal on November 4, 2014. Due to the trial court's prior retirement, Appellant had not been ordered to file a concise statement of the reasons relied upon on appeal nor was an opinion filed pursuant to Pa.R.A.P. 1925. In his appellate brief, Appellant presents the following Statement of Questions Involved:

> 1. Where [A]ppellant was charged with possessing a gun found in a car in which he was a passenger, and his defense was

that the driver exclusively possessed the gun, was it not error to bar [A]ppellant from presenting relevant and admissible evidence in support of his defense, namely, the driver's prior conviction for gun possession?

2. Did not the trial court deprive [A]ppellant of a fair and impartial trial by making prejudicial comments that negated [A]ppellant's theory of defense and irreparably damaged defense counsel's trustworthiness in the eyes of the jury?

Brief for Appellant at 3.

Appellant initially contends his judgment of sentence must be vacated and the matter remanded for a new trial in light of the trial court's error in denying his motion in limine which prohibited him from introducing evidence at trial of Mr. Black's previous possession of a firearm conviction. Appellant maintains such evidence would have bolstered his defense and permitted a reasonable inference that it was Mr. Black, not Appellant, who exclusively possessed the firearm and had ample opportunity to secret it under the passenger seat while Appellant struggled with police officers outside the car. Brief for Appellant at 8, 14. Appellant stresses defense counsel presented this theory in opening and closing statements and explored it through cross-examination of the Commonwealth's witnesses. Therefore, Appellant posits he was denied his right under the Pennsylvania constitution, the Pennsylvania Rules of Evidence and caselaw to present relevant evidence for the jury's consideration that tended to prove another individual committed the crimes with which he had been charged. Brief for Appellant at 8, 13-14.

Finally, Appellant asserts *Commonwealth v. Thompson*, 779 A.2d 1195 (Pa.Super. 2001) directly controls the instant matter because the facts of that case are "strikingly similar" to those presented herein. Brief for Appellant at 10, 12.

Our standard of review of a trial court's evidentiary ruling is as follows:

> The admissibility of evidence is within the sound discretion of the trial court, wherein lies the duty to balance the evidentiary value of each piece of evidence against the dangers of unfair prejudice, inflaming the passions of the jury, or confusing the jury. We will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion.

*Commonwealth v. Estepp*, 17 A.3d 939, 945 (Pa.Super. 2011) (citation omitted).

Pennsylvania Rule of Evidence 402 provides that, generally, "[a]ll relevant evidence is admissible" and "[e]vidence that is not relevant is not admissible." Pa.R.E. 402. Relevant evidence is that which has "any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Pa.R.E. 401(a), (b). However, pursuant to Rule 403, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of ... confusing the issues [or] misleading the jury[.]" Pa.R.E. 403.

The defense may introduce evidence that "someone else committed a crime that bears a highly detailed similarity to the crime with which a defendant is charged." *Commonwealth v. Patterson*, 625 Pa. 104, 131,

91 A.3d 55, 72 (Pa. 2014) (citation omitted). Such evidence is admissible when the lapse of time between the commission of the two crimes and the resemblance of the methodology of the two crimes establish its relevance and probative value. **Commonwealth v. Palagonia**, 868 A.2d 1212, 1216 (Pa.Super. 2005). "Thus, even if the time lapse between commission of the crimes is brief. . . the evidence is not admissible unless the nature of the crimes is so distinctive or unusual as to be like a signature or the handiwork of the same individual." **Id**. (citations and quotation marks omitted).

Herein, as in **Thompson**, **supra**, Appellant seeks to introduce the prior criminal record of the driver and owner of a vehicle, Mr. Black, who had not been charged with any crimes related to the contraband found in his vehicle and was not called as a witness at Appellant's trial. However, in **Thompson**, when finding that the driver's prior history of cocaine trafficking was relevant to demonstrate that he, and not Thompson, constructively possessed the cocaine, a panel of this Court noted that the driver had been arrested four times for cocaine trafficking in a period of two years and four months and stressed that "[i]t is the pattern of cocaine trafficking which is relevant in this case, not just any single isolated incident." **Thompson**, 779 A.2d at 1207 n. 4.

To the contrary, as the trial court noted on the record, the facts of **Thompson** are distinguishable from those in the matter *sub judice*:

> With respect to my denial of [Appellant's] motion in limine, after a careful review of Commonwealth versus Thompson, the

Court found that although the principle espoused by the Court would likely extend to other contraband, including weapons, the Thompson Court was silent as to whether its holding intended to establish a bright-line rule, or, rather, reflected the consideration of seemingly relevant factors in evaluating the admissibility of the prior criminal history of a third party.

Such factors likely included the temporal proximity of the prior convictions the defendant intends to introduce, as well as the extent and relatedness of the third party's pertinent criminal history.

Accordingly, the Court finds Thompson distinguishable to the facts of this case. In Thompson, the nexus between the prior criminal history and the narcotics recovered was presumably significant, in part, due to the packaging of narcotics and the recency [sic] of his prior trafficking.

Such factors are simply absent in this case. Here a single conviction for possession of a firearm from approximately 15 years prior to this incident does not support a reasonable inference that someone other than the defendant was the sole possessor of the firearm recovered from under the passenger seat.

N.T., 6/10/14, at 121-122.

Upon our review of the record and relevant caselaw, we find the trial court did not abuse its discretion in finding that the admissibility of Mr. Black's more than decade-old, single conviction for possession of a firearm, the circumstances surrounding which are unclear from the record, would have little probative value.

Moreover, even were we to determine the trial court erred in denying Appellant's motion in limine, contrary to Appellant's rationale, the admission of Mr. Black's criminal history does not automatically lead to the conclusion that Appellant lacked possession of the gun, for our Supreme Court has recognized that one or more individuals may be deemed to have

constructive possession of contraband where the item is in an area of joint control and equal access. **Commonwealth v. Johnson**, 611 Pa. 381, 407, 26 A.3d 1078, 1094 (2011). **See also Commonwealth v. Haskins**, 677 A.2d 328, 330 (Pa.Super. 1996) (citation omitted) (stating "[t]he fact that another person may also may have control and access does not eliminate the defendant's constructive possession; two actors may have joint control and equal access and thus both may constructively possess the contraband"). When determining whether one may be deemed to have constructive possession of contraband, this Court has stated the following:

> As appellant was not in physical possession of the contraband, the Commonwealth was required to establish that he had constructive possession of the seized items to support his convictions. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances. **Commonwealth v. Brown**, 48 A.3d 426, 430 (Pa.Super. 2012), *appeal denied,* 619 Pa. 697, 63 A.3d 1243 (2013) (internal quotation marks and citation omitted). Additionally, it is possible for two people to have joint constructive possession of an item of contraband. **Commonwealth v. Bricker**, 882 A.2d 1008, 1016–1017 (Pa.Super. 2005).

**Commonwealth v. Kinard**, 95 A.3d 279, 292 (Pa.Super. 2014) (*en banc*).

In arguing the admission of Mr. Black's prior firearms conviction would have exonerated him, Appellant ignores the evidence viewed in a light most

favorable to the Commonwealth as verdict winner and the reasonable inferences the jury may have drawn therefrom which support a conclusion that Appellant had constructive possession of the firearm, or, at a minimum, shared joint constructive possession of it with Mr. Black. Officer Chichearo testified he observed Appellant hunched over, reaching and apparently shoving something in the area where he later would discover the firearm. Similarly, Officer Winscom stated that as he approached the driver's side of the car, he saw Appellant seated in the front passenger seat bending forward, although he could not see his hands because Appellant was reaching under the seat. From this testimony, the jury reasonably may have inferred Appellant, as the sole passenger of the vehicle and the only occupant to exit from that side, had access to and control over the area beneath the front-passenger seat where the firearm was found.

In addition, the jury had heard testimony from Officers Chichearo and Winscom who observed Mr. Black exiting the vehicle from the driver's side a few moments after Appellant as well as defense counsel's arguments that it was Mr. Black who secreted the firearm under the front-passenger seat when he was alone in the vehicle. While such testimony and argument may have formed the foundation of reasonable doubt for the jury, it did not as a matter of law create a reasonable doubt requiring this Court to overturn its verdict. It was within the province of the jury as fact-finder to make credibility determinations and find Appellant had secreted the gun under the

passenger seat where he had been sitting before he struggled with officers.

*See Commonwealth v. Stembridge*, 579 A.2d 901, 905 (Pa.Super. 1990).

Accordingly, we conclude the trial court did not abuse its discretion in

excluding evidence of Mr. Black's prior conviction.

Appellant next asserts he is entitled to a new trial because the trial

court deprived him of his constitutional right to a fair and impartial one when

it made prejudicial comments that negated his defense and irreparably

damaged defense counsel's trustworthiness in the presence of the jury.

Brief for Appellant at 14, 17.   The challenged commentary occurred during

the cross-examination of Officer Winscom and reads in context as follows:

> Q.     Okay.   And then when you were falling backwards, and
> when you were hitting [Appellant], you were looking at what you
> were hitting; is that right?
> A.      Well, when I was hitting him, Officer Chichearo was there.
> Q.     Right.   But you were obviously looking at him when you
> were hitting him.
> A.      Sure.   I was giving verbal commands, and I was also
> noticing the guy get out of the car, so I was looking up the street
> at the same time.   When he got out of the car, I'm the one who
> sees him get out of the car because I'm looking right at [the] car
> the whole time.
> Q.     Well, how many minutes later was that?
> A.      Excuse me?
> Q.     Was that instantaneous that the driver got out of the car
> at the same time—
> A.      No, no.   But my point being, I'm telling you that I'm not
> looking at him.   I'm looking straight ahead as I'm dealing with
> him.   Because I also know there's a gun in that car.   I also feel
> that I know more than my partner at the time because I feel—
> Q.     I'm sorry.   I don't want to get into how you feel.
> **THE COURT**:  You don't want to talk about the gun.   You
> want to talk about the fight.   This case is about the gun, not the
> fight, not how many times he was hit in the head, not him trying

to get away, not the wrestling match on the street. It's about the gun.

    **[Defense Counsel]** Yes, your Honor. I just got done.

    **THE WITNESS:** Is it okay if I answer the question, your Honor?

    **THE COURT**: No.

    **[Defense Counsel]**: I'll move on, your Honor.

Brief for Appellant at 15-16 (citing N.T., 6/10/14, at 171-172).

Prior to engaging in the aforementioned line of questioning, defense counsel extensively had questioned Officer Winscom concerning his physical struggle with Appellant. N.T., 6/10/14, at 164-168. Although defense counsel asked for the trial court's indulgence and indicated she was wrapping up, *Id*. at 168, counsel continued exploring this line of cross-examination. *Id*. at 168-172. It was not until counsel cut off Officer Winscom's answer to one of her own queries that the trial court interjected and indicated its view that "[t]his case is about the gun" and not about the struggle in the street. *Id*. at 172. Defense counsel did not object to the trial court's characterization of the matter. To the contrary, counsel agreed with the trial court's statements and stated she had completed her cross-examination on the subject and would be moving on. *Id*. at 172.

The Commonwealth next called Detective Thomas Lauf to the stand. Detective Lauf briefly testified regarding photographs he had taken of the firearm and was questioned on cross-examination as to whether he similarly had taken photos of the injuries Appellant had sustained. Once again, the trial court interjected and indicated that the matter dealt only with the gun.

*Id*. at 177. However, at this time, counsel reminded the trial court Appellant also had been charged with resisting arrest. In response, the trial court replied "Okay. All right. Go ahead." *Id*. at 178. It was not until Detective Lauf was excused from the witness stand and the jury exited the courtroom for a brief comfort break that Appellant moved for a mistrial based upon two grounds:

> Number one, the detective mentioned, on his own—we didn't ask him—on his own he said [he] tried to take a statement from [Appellant].
> And the second ground is that your Honor has consistently been putting down the Defense strategy numerous times in front of the jury. So, your Honor, based on that, I would ask for a mistrial on both grounds.

*Id*. at 183. In response, the court indicated its disagreement with counsel's position and denied the motion. *Id*. at 184.

The Commonwealth contends Appellant has waived this claim in light of counsel's failure to lodge a timely and proper objection to the trial court's challenged remarks. Pa.R.Crim.P. 605 provides that only a defendant may move for a mistrial when an event prejudicial to him occurs and that such motion "shall be made when the event is disclosed." Pa.R.Crim.P. 605(B). Herein, not only did counsel fail to make a contemporaneous objection to the trial court's statements during Officer Winscom's cross-examination, as was done during the questioning of Detective Lauf, but counsel also failed to specifically reference the remarks Appellant cites in his appellate brief when eventually moving for a mistrial. As such, we find Appellant has waived this

issue. *See Commonwealth v. Colon*, 31 A.3d 309, 316 (Pa.Super. 2011) (stating appellate courts will not overlook defense counsel's failure to raise a timely objection to allegedly improper remarks uttered by the trial court).[3]

Judgment of sentence affirmed.

---

[3] We note that even had Appellant properly preserved this claim for appellate review, our Supreme Court has found that not every unwise or irrelevant remark a trial judge directs toward defense counsel in the course of trial and in the presence of the jury will be construed as creating an atmosphere of unfairness that constitutes grounds for a mistrial. *Commonwealth v. Jones*, 546 Pa. 161, 683 A.2d 1181 (1996). In *Jones*, the Supreme Court noted the trial court's statements were not so disparaging so as to prejudice Appellant in any manner and observed that "while at times, the comments of the trial judge evidenced his impatience with defense counsel, none of those comments were related to the issues in the case; none were reflective of any predisposition of the trial judge respecting the guilt or innocence of the defendant; and none were indicative of any bias in favor of the prosecution." *Id.*, 546 Pa. at 182, 683 A.2d at 1191. In addition, the Supreme Court stressed the trial court properly had charged the jury that it was to be the sole arbiter of the facts. *Id.*, 546 Pa. at 183, 683 A.2d at 1192.

Herein, we would similarly find that the trial court's aforementioned comment did not warrant a mistrial. Indeed, counsel had extensively cross-examined Detective Winscom about his struggle to subdue Appellant before the trial court interjected. Moreover, while the court did comment on what it deemed to be the relevant focus, when counsel later properly reminded the trial court of the resisting arrest charge following the trial court's similar statement during the cross-examination of Officer Lauf, the trial court agreed and encouraged counsel to continue the line of questioning. Finally, the trial court charged the jury that it must make factual determinations and draw inferences therefrom. The trial court further informed the jurors that they "must trust [their] recollection of the facts rather than accept any statements or comments made by Counsel or [the trial court] concerning the evidence." N.T., 6/11/14, at 58.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/2/2016</u>